**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **ARLINGTON TECHNOLOGIES LLC,** | § § § | |
| **Plaintiff,** | § § § | CIVIL ACTION NO. 2:26-cv-396 |
| **v.** | § § | |
| **LARK TECHNOLOGIES PTE. LTD.,** | § § § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § § § | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Arlington Technologies LLC ("ATL" or "Plaintiff") files this Complaint against Defendant Lark Technologies Pte. Ltd. ("Defendant" or "Lark") for infringement of U.S. Patent No. 7,668,304 (the "'304 Patent"), U.S. Patent No. 7,924,995 (the "'995 Patent"), U.S. Patent No. 8,041,344 (the "'344 Patent"), U.S. Patent No. 8,379,819 (the "'819 Patent"), U.S. Patent No. 8,862,456 (the "'456 Patent"), U.S. Patent No. 9,432,517 (the "'517 Patent"), and U.S. Patent No. 10,630,733 (the "'733 Patent") (collectively, the "Asserted Patents").

**THE PARTIES**

1.      Arlington Technologies LLC is a Texas limited liability company, with a principal place of business in Allen, TX.

2.      Defendant Lark Technologies Pte. Ltd. is a corporation organized and existing under the laws of Singapore, with a principal place of business at 1 Raffles Quay, #26-10, Singapore 048583.

3.      On information and belief, Defendant is a multinational information technology company that develops and provides cloud-based communication and collaboration services,

1

including video conferencing, messaging, phone systems, and virtual events. Defendant sells its products and services to customers, including customers in this District. *See, e.g.*, *EMM Innovations LLC v. Lark Technologies Pte. Ltd.*, No. 2:24-cv-00606-JRG, Dkt. No. 26, ¶¶ 8-10 (E.D. Tex. Feb. 24, 2025) ("Lark admits that it offers products in the state of Texas and in the United States and has [] paying customers in this District.").

4.    On information and belief, Defendant operates and owns the larksuite.com website, through which it markets, offers, distributes, and provides technical support for its cloud-based communication and collaboration services, including video conferencing, messaging, phone systems, and virtual events, throughout the United States, including in this District. *See, e.g.*, *id.*, ¶ 12 ("Lark admits that it owns and operates the domain 'larksuite.com.'").

5.    On information and belief, Defendant places, has placed, and/or contributed to placing Accused Products (as more particularly identified and described throughout this Complaint) into the stream of commerce via an established distribution channel knowing or understanding that such Accused Products would be sold in the United States, including in this District. Defendant has also derived substantial revenues from infringing acts in this District, including from the sale of the Accused Products.

6.    On information and belief, Defendant is engaged in making, using, selling, offering for sale, and/or importing, and/or inducing its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, the products and services accused of infringement, such as cloud-based communication and collaboration services, including video conferencing, messaging, phone systems, and virtual events.

2

7.      Prior to the filing of the Complaint, Plaintiff attempted to engage Defendant and/or its agents in good faith licensing discussions related to the Asserted Patents, including by sending them correspondence on January 20, 2026 (delivered on January 23, 2026), notifying Defendant of the need to license the Asserted Patents. Defendant's past and continuing sales of its products and services (i) willfully infringe the Asserted Patents and (ii) impermissibly take the significant benefits of Plaintiff's patented technologies without fair compensation to Plaintiff.

8.      Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendant's products and/or services accused of infringement, such as cloud-based communication and collaboration services, including phone systems, messaging, and video, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries, Defendant does business in the U.S., the state of Texas, and in this District.

## JURISDICTION AND VENUE

9.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). *See, e.g.*, *EMM Innovations LLC v. Lark Technologies Pte. Ltd.*, No. 2:24-cv-00606-JRG, Dkt. No. 26, ¶ 6 (E.D. Tex. Feb. 24, 2025) ("Lark does not contest . . . subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).").

11.     This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, inter alia, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; and (ii) Defendant has committed and continues to commit, acts of

patent infringement in this State and in this District. Such acts of infringement include the making, using, testing, offering for sale, and selling of Accused Products (as more particularly identified and described throughout this Complaint, below) that leverage and infringe the inventions of the Asserted Patents in this State and this District and/or inducing others to commit acts of patent infringement in this State and District.

12.    On information and belief, Defendant has purposefully and voluntarily placed, and is continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the knowledge and intent that the Accused Products are and/or will be used, sold to, and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that the Accused Products (whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District.

13.    In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents. Defendant derives benefits from its presence in this District. For example, Defendant receives revenue from sales and distribution via electronic transactions conducted on and using at least its website located at www.larksuite.com, and its incorporated and/or related systems.

14.    In addition, Defendant has knowingly induced, and continues to knowingly induce, infringements within this State and this District by advertising, marketing, offering for sale and/or selling Accused Products (as more particularly identified and described throughout this Complaint)

4

that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Accused Products is directed to consumers, customers, integrators, suppliers, distributors, resellers, partners, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials that facilitate, direct, and encourage use of infringing functionality with Defendant's knowledge thereof.

15. Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District. *See, e.g.*, *id.*, ¶ 7 ("Lark does not contest … that this Court has personal jurisdiction over Lark.").

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

### DEFENDANT'S PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENTS

17. Prior to the filing of the Complaint, Plaintiff attempted to engage Defendant and/or its agents in good faith licensing discussions related to the Asserted Patents, including by sending written correspondence on January 23, 2026 to ByteDance Ltd., the parent company of Defendant, providing notice of the Asserted Patents and Defendant's need to obtain a license to practice the claimed inventions.

5

18. Claim charts for each of the Asserted Patents identifying exemplary infringed claims and exemplary infringing Lark products and services were made available for download in a private data room on February 5, 2026.

19. The Accused Products addressed in the Counts below include, but are not limited to, products and services identified in ATL's correspondence to Defendant. Defendant's past and continuing sales of the Accused Products (i) willfully infringe the Asserted Patents and (ii) impermissibly usurp the significant benefits of ATL's patented technologies without fair compensation.

## THE ASSERTED PATENTS AND TECHNOLOGY

20. ATL is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Indeed, ATL also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

21. The '304 Patent is entitled "Display hierarchy of participants during phone call." The '304 Patent lawfully issued on February 23, 2010, and stems from U.S. Application No. 11/339,913, which was filed on January 25, 2006. A copy of the '304 Patent is attached hereto as Ex. A.

22. The '995 Patent is entitled "Teleconferencing system with multi-channel imaging." The '995 Patent lawfully issued on April 12, 2011, and stems from U.S. Application No. 11/742,559, which was filed on April 30, 2007. A copy of the '995 Patent is attached hereto as Ex. B.

23.     The '344 Patent is entitled "Cooling off period prior to sending dependent on user's state." The '344 Patent lawfully issued on October 18, 2011, and stems from U.S. Application No. 11/768,567, which was filed on June 26, 2007. A copy of the '344 Patent is attached hereto as Ex. C.

24.     The '819 Patent is entitled "Indexing recordings of telephony sessions." The '819 Patent lawfully issued on February 19, 2013, and stems from U.S. Application No. 12/343,643, which was filed on December 24, 2008. A copy of the '819 Patent is attached hereto as Ex. D.

25.     The '456 Patent is entitled "System and method for automatic language translation for applications." The '456 Patent lawfully issued on October 14, 2014, and stems from U.S. Application No. 13/428,135, which was filed on March 23, 2012. A copy of the '456 Patent is attached hereto as Ex. E.

26.     The '517 Patent is entitled "Methods, apparatuses, and systems for generating an action item in response to a detected audio trigger during a conversation." The '517 Patent lawfully issued on August 30, 2016, and stems from U.S. Application No. 13/761,464, which was filed on February 7, 2013. A copy of the '517 Patent is attached hereto as Ex. F.

27.     The '733 Patent is entitled "Generating recording access permissions based on meeting properties." The '733 Patent lawfully issued on April 21, 2020, and stems from U.S. Application No. 14/657,039, which was filed on March 13, 2015. A copy of the '733 Patent is attached hereto as Ex. G.

28.     The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

29.    To the extent necessary, ATL has complied with the requirements of 35 U.S.C. § 287, such that ATL may recover pre-suit damages.

## COUNT I
### (Infringement of U.S. Patent No. 7,668,304)

30.    Plaintiff incorporates the preceding paragraphs herein by reference.

31.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

32.    Plaintiff is the assignee of the '304 Patent, with ownership of all substantial rights in the '304 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

33.    The '304 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

34.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '304 Patent in this judicial district and elsewhere in Texas and the United States.

35.    Defendant designs, offers for sale, uses, and sells services and products, such as Lark Meetings, Lark Rooms, and Lark Webinar ("the '304 Accused Products"), that infringe the '304 Patent.

36.    Defendant directly infringes the '304 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '304 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies

8

covered by the '304 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark Meetings Accused Product.[1]

37.     For example, Defendant infringes claim 1 of the '304 Patent via the '304 Accused Products. Defendant, via the '304 Accused Products, performs a "method of enhancing a conference call." For example, the '304 Accused Products contain features that enhance a conference call.



Source: https://www.larksuite.com/en_us/product/video.

38.     The '304 Accused Products connect "first and second telecommunication devices to create a live conference call, the first and second telecommunication devices being associated, respectively, with first and second participants." For example, Lark connects two or more participants using independent telecommunications devices (e.g., smartphones, computers) to a conference call:

---

[1] *See, e.g.*, https://www.larksuite.com/en_us/plans; https://www.larksuite.com/en_us/product/video.



**Group Meetings**

# Engage with larger audiences

Hold interactive online meetings and events with up to 1,000 participants and up to 50 breakout sessions for closed group discussions within a meeting.

## I. Intro

Lark Meetings allows you to connect securely and easily, from a quick one-on-one audio call to video events with hundreds of participants.

Sources: https://www.larksuite.com/hc/en-US/articles/722304261257-change-your-video-meeting-s-layout (emphasis added); https://www.larksuite.com/en_us/product/video (emphasis added); https://www.larksuite.com/hc/en-US/articles/390182176627-master-lark-meetings-advanced-features (emphasis added).

10

39.    The '304 Accused Products determine "characteristics of each of the first and second participants." For example, Lark determines characteristics of each of the participants, e.g., whether participants are actively speaking:



Source: https://www.larksuite.com/hc/en-US/articles/722304261257-change-your-video-meeting-s-layout (emphasis added).

40.    The '304 Accused Products create "a hierarchal structure of the first and second participants based upon their respective determined characteristics, wherein the first participant has a first hierarchical ranking and the second participant a second hierarchical ranking, and wherein the hierarchical structure indicates the relative values of the first and second hierarchical rankings." For example, Lark ranks an active speaker at a first hierarchical ranking for prominent

display and non-speaking participants at a second hierarchical ranking for smaller display or non-display:



Source: https://www.larksuite.com/hc/en-US/articles/722304261257-change-your-video-meeting-s-layout (emphasis added).

41.     The '304 Accused Products, during the live conference call, provide "the hierarchical structure to at least the second participant." For example, Lark displays to all participants of a conference call the active speaker at a first hierarchical ranking prominently and non-speaking participants at the second hierarchical ranking less prominently, e.g., in smaller windows or not displayed at all:



Source: https://www.larksuite.com/hc/en-US/articles/722304261257-change-your-video-meeting-s-layout (emphasis added).

42.    The technology discussion above and the exemplary '304 Accused Products provide context for Plaintiff's infringement allegations.

43.    At a minimum, Defendant has known of the '304 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '304 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting Defendant to its infringement. Moreover, Defendant has known of the '304 Patent and Plaintiff's theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

44. On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '304 Accused Products that include or are made using all of the limitations of one or more claims of the '304 Patent to directly infringe one or more claims of the '304 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '304 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '304 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '304 Accused Products, creating and/or maintaining established distribution channels for the '304 Accused Products into and within the United States, manufacturing the '304 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '304 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.*, https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/en_us/ product/video (Lark advertising Meetings); *see also generally* https://www.larksuite.com/hc/en-US/category/7054521564292710406-meetings (Lark offering technical support for Meetings, including for meeting display settings). For example, Defendant configures, designs, offers to sell, and sells the Accused Products and such Accused Products contain specific instructions, such as source code and configuration files, that cause such products to infringe the '304 Patent. For

example, the instructions such as source code and configuration files of Lark Meetings perform conference call enhancement utilizing a hierarchal ranking structure that infringe the '304 Patent.

45.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under 35 U.S.C. § 271(c), one or more claims of the '304 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '304 Accused Products. To the extent that the '304 Accused Products do not directly infringe one or more claims of the '304 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '304 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '304 Accused Products to perform in an infringing manner and are a material part of the invention of the '304 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark Meetings implements a custom hierarchal ranking structure which enables enhanced video conferencing, functionality that is not generic and is especially made and specifically adapted to perform the conference call enhancement that infringes the '304 Patent. Further, the hierarchal ranking structure in Lark Meetings is a core functionality that inherently infringes the '304 Patent and lacks any substantial non-infringing use.

46.    On information and belief, despite having knowledge of the '304 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '304 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '304 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is

entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

47.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (Infringement of U.S. Patent No. 7,924,995)

48.     Plaintiff incorporates the preceding paragraphs herein by reference.

49.     This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq.*

50.     Plaintiff is the assignee of the '995 Patent, with ownership of all substantial rights in the '995 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

51.     The '995 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

52.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '995 Patent in this judicial district and elsewhere in Texas and the United States.

53.     Defendant designs, offers for sale, uses, and sells services and products, such as Lark Meetings and Lark Rooms ("the '995 Accused Products"), that infringe the '995 Patent.

54.     Defendant directly infringes the '995 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '995 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies

16

covered by the '995 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark Meetings Accused Product.[2]

55.    For example, Defendant infringes claim 1 of the '995 Patent via the '995 Accused Products. Defendant, via the '995 Accused Products, performs a "method comprising: determining, at a teleconference bridge, the presence of i) a first endpoint and a second endpoint at a first teleconference location, said teleconference bridge being able to receive audio signals from each of said first endpoint and said second endpoint, and ii) a third endpoint and a fourth endpoint at a second teleconference location, said teleconference bridge being able to transmit audio signals to each of said third endpoint and said fourth endpoint, wherein said first teleconference location and said second teleconference location are acoustically isolated from each other." For example, the '995 Accused Products connect participants, e.g., four participants, with audio capabilities in two distinct teleconference locations, e.g., using breakout rooms, via a teleconference bridge.



---

[2] *See, e.g.*, https://www.larksuite.com/en_us/plans.



## I. Intro

With breakout rooms, you can allow participants to meet in smaller groups—ideal for scenarios such as corporate training or group interviews. Different groups won't interfere with each other, allowing discussions to stay focused. You can create several breakout rooms in a single meeting, eliminating the need for multiple meetings.

Hosts can create and end breakout rooms. Both hosts and co-hosts can manage rooms, move participants to different rooms, and move between rooms. Participants cannot switch rooms on their own.



Sources: https://www.larksuite.com/en_us/product/video; https://www.larksuite.com/hc/en-US/articles/360048488353-use-breakout-rooms (emphasis added).

For example, the following graphic illustrates the architectural structure of Lark Meetings utilizing breakout rooms and a teleconference bridge:



56.     The '995 Accused Products assign "i) said first endpoint and said third endpoint to a first audio channel, and ii) said second endpoint and said fourth endpoint to a second audio channel." For example, Lark assigns participants to different breakout rooms where audio is transmitted between participants in each breakout room:



Source: https://www.larksuite.com/hc/en-US/articles/360048488353-use-breakout-rooms.

For example, the following graphic illustrates the architectural structure of Lark Meetings utilizing breakout rooms, a teleconference bridge, and audio channels:



57.    The '995 Accused Products receive "i) a first audio signal from said first endpoint, and ii) a second audio signal from said second endpoint; and transmitting i) a third audio signal to all endpoints that have been assigned to said first audio channel at said second teleconference location, wherein said third audio signal is based on said first audio signal, and ii) a fourth audio signal to all endpoints that have been assigned to said second audio channel at said second teleconference location, wherein said fourth audio signal is based on said second audio signal." For example, Lark receives audio from one participant in a breakout room and transmits the audio to all participants assigned to the same breakout room:

## I. Intro

With breakout rooms, you can allow participants to meet in smaller groups—ideal for scenarios such as corporate training or group interviews. Different groups won't interfere with each other, allowing discussions to stay focused. You can create several breakout rooms in a single meeting, eliminating the need for multiple meetings.

Hosts can create and end breakout rooms. Both hosts and co-hosts can manage rooms, move participants to different rooms, and move between rooms. Participants cannot switch rooms on their own.

Source: https://www.larksuite.com/hc/en-US/articles/360048488353-use-breakout-rooms (emphasis added).

21

For example, the following graphic illustrates the architectural structure of Lark Meetings utilizing breakout rooms, a teleconference bridge, audio channels, and audio signals:



58.    The technology discussion above and the exemplary '995 Accused Products provide context for Plaintiff's infringement allegations.

59.    At a minimum, Defendant has known of the '995 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '995 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting Defendant to its infringement. Moreover, Defendant has known of the '995 Patent and Plaintiff's theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

60.    On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '995 Accused Products that include or are made using all of the limitations of one or more claims of the '995 Patent to directly infringe one or more claims of the '995 Patent (e.g., claim 1, as

discussed above) by using, offering for sale, selling, and/or importing the '995 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '995 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '995 Accused Products, creating and/or maintaining established distribution channels for the '995 Accused Products into and within the United States, manufacturing the '995 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '995 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.*, https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/en_us/ product/video (Lark advertising Meetings); *see also generally* https://www.larksuite.com/hc/en-US/category/7054521564292710406-meetings (Lark offering technical support for Meetings, including for audio routing features). For example, Defendant configures, designs, offers to sell, and sells the Accused Products and such Accused Products contain specific instructions, such as source code and configuration files, that cause such products to infringe the '995 Patent. For example, the instructions such as source code and configuration files of Lark Meetings perform dual-channel teleconference audio routing that infringe the '995 Patent.

61.     In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under 35 U.S.C. § 271(c), one or more claims of the '995 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or

consumers that use, import, purchase, or sell the '995 Accused Products. To the extent that the '995 Accused Products do not directly infringe one or more claims of the '995 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '995 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '995 Accused Products to perform in an infringing manner and are a material part of the invention of the '995 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark Meetings implements a custom teleconference audio routing mechanism, functionality that is not generic and is especially made and specifically adapted to perform the dual-channel teleconference audio routing that infringes the '995 Patent. Further, the dual-channel teleconference audio routing in Lark Meetings is a core functionality that inherently infringes the '995 Patent and lacks any substantial non-infringing use.

62.    On information and belief, despite having knowledge of the '995 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '995 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '995 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

63.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (Infringement of U.S. Patent No. 8,041,344)

64.    Plaintiff incorporates the preceding paragraphs herein by reference.

65.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

66.    Plaintiff is the assignee of the '344 Patent, with ownership of all substantial rights in the '344 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

67.    The '344 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

68.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '344 Patent in this judicial district and elsewhere in Texas and the United States.

69.    Defendant designs, offers for sale, uses, and sells services and products, such as Lark Messenger ("the '344 Accused Products"), that infringe the '344 Patent.

70.    Defendant directly infringes the '344 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '344 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '344 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark Messenger Accused Product.[3]

71.    For example, Defendant infringes claim 1 of the '344 Patent via the '344 Accused Products. Defendant, via the '344 Accused Products, performs a "method for managing messages

---

[3] *See, e.g.*, https://www.larksuite.com/en_us/plans.

in a communications environment." For example, the '344 Accused Products contain features that manage messaging communications.



Source: https://www.larksuite.com/en_us/product/messenger.

72.     The '344 Accused Products intercept "the sending of a message sent by a sender" and determine "if a delay mode or an impaired condition mode is active." For example, Lark intercepts the sending of a message with a scheduled message feature and determines if the message that is being scheduled is active through, e.g., the date and time parameters:

## I. Intro

You can schedule messages to be sent later. This helps when you're working across time zones or want a colleague to read your message after they've returned from leave.

2. Set the date and time you want the message to be sent based on your time zone. Lark displays the date and local time of the recipient. Click **Schedule** to send the message to the recipient at the date and time you've set.

26



Source: https://www.larksuite.com/hc/en-US/articles/783688156546-schedule-messages-to-be-sent-later (emphasis added).

73.    The '344 Accused Products, when the delay mode or the impaired condition mode is not active, forward "the message to one or more recipients." For example, if delay mode is not active, Lark forwards the message to the intended recipient(s):



Source: https://www.larksuite.com/hc/en-US/articles/783688156546-schedule-messages-to-be-sent-later (emphasis added).

74.   The '344 Accused Products, when the delay mode or the impaired condition mode is active, perform "one or more of sending the message after a delay, returning the message to the sender for approval, managing the message based on a profile and holding the message for management at a later time." For example, when delay mode is active, Lark sends the message to the recipient(s) at the specified time (i.e., after a delay):

2. Set the date and time you want the message to be sent based on your time zone. Lark displays the date and local time of the recipient. Click **Schedule** to send the message to the recipient at the date and time you've set.





Source: https://www.larksuite.com/hc/en-US/articles/783688156546-schedule-messages-to-be-sent-later (emphasis added).

75.   The technology discussion above and the exemplary '344 Accused Products provide context for Plaintiff's infringement allegations.

28

76.     At a minimum, Defendant has known of the '344 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '344 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting Defendant to its infringement. Moreover, Defendant has known of the '344 Patent and Plaintiff's theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

77.     On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '344 Accused Products that include or are made using all of the limitations of one or more claims of the '344 Patent to directly infringe one or more claims of the '344 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '344 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '344 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '344 Accused Products, creating and/or maintaining established distribution channels for the '344 Accused Products into and within the United States, manufacturing the '344 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '344 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.*, https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/en_us/

product/messenger    (Lark    advertising    Messenger);    *see    also    generally* https://www.larksuite.com/hc/en-US/category/7054521564296904710-messenger (Lark offering technical support for Messenger, including for message delivery features). For example, Defendant configures, designs, offers to sell, and sells the Accused Products and such Accused Products contain specific instructions, such as source code and configuration files, that cause such products to infringe the '344 Patent. For example, the instructions such as source code and configuration files of Lark Messenger perform scheduled message delivery that infringe the '344 Patent.

78.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under 35 U.S.C. § 271(c), one or more claims of the '344 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '344 Accused Products. To the extent that the '344 Accused Products do not directly infringe one or more claims of the '344 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '344 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '344 Accused Products to perform in an infringing manner and are a material part of the invention of the '344 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark Messenger implements a custom message delivery mechanism, functionality that is not generic and is especially made and specifically adapted to perform scheduled message delivery that infringes the '344 Patent. Further, the scheduled message delivery in Lark Messenger is a core functionality that inherently infringes the '344 Patent and lacks any substantial non-infringing use.

79.    On information and belief, despite having knowledge of the '344 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '344 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '344 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

80.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<strong><u>COUNT IV</u></strong><br><strong>(Infringement of U.S. Patent No. 8,379,819)</strong>

81.    Plaintiff incorporates the preceding paragraphs herein by reference.

82.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

83.    Plaintiff is the assignee of the '819 Patent, with ownership of all substantial rights in the '819 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

84.    The '819 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

85.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '819 Patent in this judicial district and elsewhere in Texas and the United States.

86.     Defendant designs, offers for sale, uses, and sells services and products, such as Lark AI Meeting Notes ("the '819 Accused Products"), that infringe the '819 Patent.

87.     Defendant directly infringes the '819 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '819 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '819 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark AI Meeting Notes Accused Product.[4]

88.     For example, Defendant infringes claim 1 of the '819 Patent via the '819 Accused Products. Defendant, via the '819 Accused Products, performs a "method of indexing a recording of a telephony session, carried out in a computerized system." For example, the '819 Accused Products contain a computerized system that indexes call recording segments.

---

[4] *See, e.g.*, https://www.larksuite.com/product/ai-meeting-notes.





Source: https://www.larksuite.com/product/ai-meeting-notes (emphasis added).

89.     The '819 Accused Products receive, "during the recording of said telephony session or during a playback of said recording, an indication including parameters which identify a discrete

33

segment of the recording as being of interest." For example, Lark receives, during a video call session on Lark, an indication including parameters which identify a discrete segment of the recording as being of interest (e.g., Smart Chapters and/or Key Points):



Source: https://www.larksuite.com/product/ai-meeting-notes (emphasis added).

90.     The '819 Accused Products store, "in an index associated with the recording of the session, an identifier which identifies said discrete segment of the recording." For example, Lark stores, e.g. in a Video Meeting Assistant tab associated with the recording (i.e., an index associated with the video call session), a Smart Chapters section which identifies the discrete segment:



Source: https://www.larksuite.com/product/ai-meeting-notes (emphasis added).

91.     The '819 Accused Products perform a method "wherein said identifier identifies said discrete segment by one of the following options: (i) a start point and an end point; (ii) a reference point and a duration beginning with said reference point; (iii) a reference point and a duration ending with said reference point; (iv) a reference point and a duration centered on said reference point; (v) a reference point, a first duration occurring before and ending with said reference point, and a second duration beginning with and occurring after said reference point; (vi) a reference point, an offset forwards or backwards from the reference point, and a duration

beginning with or ending with said offset." For example, Lark stores, e.g. in a Video Meeting Assistant tab associated with the recording (i.e., an index associated with the video call session), a Smart Chapters section which identifies the discrete segment by a reference point and a duration beginning with that reference point (i.e., option (ii)), e.g., reference point "Q1 sales overview" has a "00:01" duration beginning:



Source: https://www.larksuite.com/product/ai-meeting-notes (emphasis added).

92. The technology discussion above and the exemplary '819 Accused Products provide context for Plaintiff's infringement allegations.

93. At a minimum, Defendant has known of the '819 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '819 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting Defendant to its infringement. Moreover, Defendant has known of the '819 Patent and Plaintiff's

theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

94.     On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '819 Accused Products that include or are made using all of the limitations of one or more claims of the '819 Patent to directly infringe one or more claims of the '819 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '819 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '819 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '819 Accused Products, creating and/or maintaining established distribution channels for the '819 Accused Products into and within the United States, manufacturing the '819 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '819 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.*, https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/product/ ai-meeting-notes (Lark advertising AI Meeting Notes); *see also, e.g.,* https://www.larksuite.com/hc/en-US/articles/732542328457-generate-ai-notes-for-meetings (Lark offering technical support for AI Meeting Notes). For example, Defendant configures, designs, offers to sell, and sells the Accused Products and such Accused Products contain specific

instructions, such as source code and configuration files, that cause such products to infringe the '819 Patent. For example, the instructions such as source code and configuration files of Lark AI Meeting Notes perform call recording segment indexing that infringe the '819 Patent.

95.     In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under 35 U.S.C. § 271(c), one or more claims of the '819 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '819 Accused Products. To the extent that the '819 Accused Products do not directly infringe one or more claims of the '819 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '819 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '819 Accused Products to perform in an infringing manner and are a material part of the invention of the '819 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark AI Meeting Notes implements a custom indexing mechanism, functionality that is not generic and is especially made and specifically adapted to perform the call recording segment indexing that infringes the '819 Patent. Further, the call recording segment indexing in Lark AI Meeting Notes is a core functionality that inherently infringes the '819 Patent and lacks any substantial non-infringing use.

96.     On information and belief, despite having knowledge of the '819 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '819 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '819 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful,

flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

97. Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V
### (Infringement of U.S. Patent No. 8,862,456)

98. Plaintiff incorporates the preceding paragraphs herein by reference.

99. This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

100. Plaintiff is the assignee of the '456 Patent, with ownership of all substantial rights in the '456 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

101. The '456 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

102. Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '456 Patent in this judicial district and elsewhere in Texas and the United States.

103. Defendant designs, offers for sale, uses, and sells services and products, such as Lark Meetings, Lark Rooms, and Lark Webinar ("the '456 Accused Products"), that infringe the '456 Patent.

104.    Defendant directly infringes the '456 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '456 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '456 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark Meetings Accused Product.[5]

105.    For example, Defendant infringes claim 1 of the '456 Patent via the '456 Accused Products. Defendant, via the '456 Accused Products, performs a "method to translate displayed user-interface text of a computer application." For example, the '456 Accused Products contain real-time language translation features that provide live caption translations and display the translated text to a user.



---

[5] *See, e.g.*, https://www.larksuite.com/en_us/plans.



Source: https://www.larksuite.com/en_us/product/video (emphasis added).

106.    The '456 Accused Products intercept, "by a processor coupled to a memory and a screen, a command to display user-interface text on the screen in a first language, the command comprising the user-interface text to display in the first language" and extracts "user-interface text to translate from the command." For example, Lark intercepts, by a processor coupled to a memory and a screen, the default live captions generated by the application in a first language (i.e., command to display user-interface text on the screen) and extracts the captions to be translated (i.e., extracting user-interface text to translate):

## I. Intro

Lark Meetings provides real-time speech recognition and translation to help with international collaboration.

- Automatic speech recognition: AI can automatically recognize speech in Chinese, English, and Japanese, and generate real-time subtitles.

- Multilingual translation: The subtitles can be translated into multiple languages and displayed together with the original text.

- History search: See the entire subtitle history at any time during the meeting. Searching, filtering, and copying the subtitle history is also available.

**Translate subtitles**

You can set the target language that you'd like to translate the subtitles into.

**Note**: The subtitle translation is only reliable when the language spoken is Chinese, English, or Japanese.

1. Get into the subtitle settings by either of the following ways:

   ○ During a meeting, hover over the subtitle and click the **Translate** icon in the upper-right corner.

   ○ Before a meeting, click **Meetings** > the ⚙ **Settings** icon > **Subtitles**.

2. Choose the target language.

3. Optionally, select **Show source text and translation at the same time**.

The translation shows up as the subtitles automatically.

Source: https://www.larksuite.com/hc/en-US/articles/360048487673-use-subtitles (emphasis added).

107.    The '456 Accused Products query "a translation mechanism by use of the extracted user-interface text." For example, Lark uses artificial intelligence (AI) (i.e., a translation mechanism) to translate the live captions:

**I. Intro**

Lark Meetings provides real-time speech recognition and translation to help with international collaboration.

- Automatic speech recognition: AI can automatically recognize speech in Chinese, English, and Japanese, and generate real-time subtitles.

- Multilingual translation: The subtitles can be translated into multiple languages and displayed together with the original text.

- History search: See the entire subtitle history at any time during the meeting. Searching, filtering, and copying the subtitle history is also available.

Source: https://www.larksuite.com/hc/en-US/articles/360048487673-use-subtitles (emphasis added).

108.    The '456 Accused Products receive "translated user-interface text in a second language from the translation mechanism" and display "the translated user-interface text in the

second language." For example, Lark receives the translated captions in a second language using

AI (i.e., the translation mechanism) and displays the captions in the second language:



Sources: https://www.larksuite.com/hc/en-US/articles/360048487673-use-subtitles;
https://www.larksuite.com/en_us/product/video (emphasis added).

109.    The technology discussion above and the exemplary '456 Accused Products

provide context for Plaintiff's infringement allegations.

110. At a minimum, Defendant has known of the '456 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '456 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting Defendant to its infringement. Moreover, Defendant has known of the '456 Patent and Plaintiff's theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

111. On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '456 Accused Products that include or are made using all of the limitations of one or more claims of the '456 Patent to directly infringe one or more claims of the '456 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '456 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '456 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '456 Accused Products, creating and/or maintaining established distribution channels for the '456 Accused Products into and within the United States, manufacturing the '456 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '456 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.,* https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/en_us/

44

product/video (Lark advertising Meetings); *see also generally* https://www.larksuite.com/hc/en-US/category/7054521564292710406-meetings (Lark offering technical support for Meetings, including for language translation features). For example, Defendant configures, designs, offers to sell, and sells the Accused Products and such Accused Products contain specific instructions, such as source code and configuration files, that cause such products to infringe the '456 Patent. For example, the instructions such as source code and configuration files of Lark Meetings perform real-time language translation that infringe the '456 Patent.

112.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under 35 U.S.C. § 271(c), one or more claims of the '456 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '456 Accused Products. To the extent that the '456 Accused Products do not directly infringe one or more claims of the '456 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '456 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '456 Accused Products to perform in an infringing manner and are a material part of the invention of the '456 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark Meetings implements a custom language translation mechanism, functionality that is not generic and is especially made and specifically adapted to perform the real-time language translation that infringes the '456 Patent. Further, the real-time language translation in Lark Meetings is a core functionality that inherently infringes the '456 Patent and lacks any substantial non-infringing use.

113.    On information and belief, despite having knowledge of the '456 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '456 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '456 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

114.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI
### (Infringement of U.S. Patent No. 9,432,517)

115.    Plaintiff incorporates the preceding paragraphs herein by reference.

116.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

117.    Plaintiff is the assignee of the '517 Patent, with ownership of all substantial rights in the '517 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

118.    The '517 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

46

119.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '517 Patent in this judicial district and elsewhere in Texas and the United States.

120.    Defendant designs, offers for sale, uses, and sells services and products, such as Lark AI Meeting Notes ("the '517 Accused Products"), that infringe the '517 Patent.

121.    Defendant directly infringes the '517 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '517 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '517 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark AI Meeting Notes Accused Product.[6]

122.    For example, Defendant infringes claim 1 of the '517 Patent via the '517 Accused Products. Defendant, via the '517 Accused Products, performs a "method comprising: monitoring, by the processor, of audio content of a conversation having a plurality of participants." For example, Lark via the '517 Accused Products monitors, by the processor, audio content of a conference call, i.e., audio content of a conversation having multiple participants, to generate a summary with key points and action items:

---

[6] *See, e.g.*, https://www.larksuite.com/product/ai-meeting-notes.



Source: https://www.larksuite.com/product/ai-meeting-notes (emphasis added).

123.    The '517 Accused Products detect, "by the processor, a predefined audio trigger in the audio content." For example, Lark using a trained AI model detects keywords and phrases (i.e.,

predefined audio triggers), e.g., that indicate whether an action item is being discussed and/or specific participants are referenced, in a conversation:





49





Sources: https://www.larksuite.com/product/ai-meeting-notes; https://www.larksuite.com/hc/en-US/articles/732542328457-generate-ai-notes-for-meetings (emphasis added).

124.    The '517 Accused Products generate, "by the processor, at least one action item associated with at least one of the plurality of participants in response to detecting the predefined audio trigger, wherein the at least one action item is based on the predefined audio trigger and on a portion of the audio content associated with the predefined audio trigger." For example, when Lark detects a predefined audio trigger (e.g., indicating an action item and/or specific participant), Lark generates, by the processor, an action item associated with at least one individual on the call based on the predefined audio trigger and associated discussion. For example, the AI-generated notes may recite that a specific participant is assigned the action item or automatically attach a Task to the specific participant:

51





Source: https://www.larksuite.com/product/ai-meeting-notes (emphasis added).

125.    The '517 Accused Products notify, "by the processor, the at least one of the plurality of participants that the at least one action item has been generated." For example, Lark notifies, by the processor, at least one participant of the call, that an action item has been generated by providing a call summary including action items immediately after the call ends:

52





## View AI Notes after the meeting

### View the AI Notes document

Prerequisite: **Generate AI-enhanced meeting notes in Minutes** must be selected in the meeting settings. This option is selected by default.

By default, all participants will receive a bot message with the link to the AI Notes document after the meeting ends.

- If there is a meeting group, the link will be sent to the group.

- If there is not a meeting group yet, Video Meeting Assistant will send the link.

- For one-on-one calls, the link will be sent to the corresponding private chat.

Click the message to view the AI Notes document, which may include meeting info, a summary, a to-do list, a transcription, or more.





Sources: https://www.larksuite.com/product/ai-meeting-notes; https://www.larksuite.com/hc/en-US/articles/732542328457-generate-ai-notes-for-meetings (emphasis added).

126.    The technology discussion above and the exemplary '517 Accused Products provide context for Plaintiff's infringement allegations.

127.    At a minimum, Defendant has known of the '517 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '517 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting Defendant to its infringement. Moreover, Defendant has known of the '517 Patent and Plaintiff's theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

128.    On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the

'517 Accused Products that include or are made using all of the limitations of one or more claims of the '517 Patent to directly infringe one or more claims of the '517 Patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '517 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '517 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '517 Accused Products, creating and/or maintaining established distribution channels for the '517 Accused Products into and within the United States, manufacturing the '517 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '517 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.*, https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/product/ai-meeting-notes (Lark advertising AI Meeting Notes); *see also, e.g.,* https://www.larksuite.com/hc/en-US/articles/732542328457-generate-ai-notes-for-meetings (Lark offering technical support for AI Meeting Notes). For example, Defendant configures, designs, offers to sell, and sells the Accused Products and such Accused Products contain specific instructions, such as source code and configuration files, that cause such products to infringe the '517 Patent. For example, the instructions such as source code and configuration files of Lark AI Meeting Notes perform action item generation based on audio triggers that infringe the '517 Patent.

129.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under

35 U.S.C. § 271(c), one or more claims of the '517 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '517 Accused Products. To the extent that the '517 Accused Products do not directly infringe one or more claims of the '517 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '517 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '517 Accused Products to perform in an infringing manner and are a material part of the invention of the '517 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark AI Meeting Notes implements a custom audio listening system that detects an audio trigger and generates an action item to notify participants, functionality that is not generic and is especially made and specifically adapted to perform the action item notification methods that infringe the '517 Patent. Further, the audio listening system in Lark AI Meeting Notes is a core functionality that inherently infringes the '517 Patent and lacks any substantial non-infringing use.

130. On information and belief, despite having knowledge of the '517 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '517 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '517 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

131.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII
### (Infringement of U.S. Patent No. 10,630,733)

132.    Plaintiff incorporates the preceding paragraphs herein by reference.

133.    This cause of action arises under the patent laws of the United States, and, in particular, 35 U.S.C. §§ 271, *et seq*.

134.    Plaintiff is the assignee of the '733 Patent, with ownership of all substantial rights in the '733 Patent, including the right to exclude others and to enforce, sue, and recover damages for past, present, and future infringements.

135.    The '733 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

136.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '733 Patent in this judicial district and elsewhere in Texas and the United States.

137.    Defendant designs, offers for sale, uses, and sells services and products, such as Lark Meetings Lark Rooms, and Lark Webinar ("the '733 Accused Products"), that infringe the '733 Patent.

138.    Defendant directly infringes the '733 Patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '733 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies

covered by the '733 Patent. For example, on Defendant's website, Defendant sells and offers for sale the Lark Meetings Accused Product.[7]

139.    For example, Defendant infringes claim 8 of the '733 Patent via the '733 Accused Products. Defendant, via the '733 Accused Products, performs a "method of operating a meeting publishing system to generate meeting publishing permissions." For example, the '733 Accused Products contain call recording features that include access permissions.



## I. Intro

Participants can start recording manually during a meeting, or enable automatic recording beforehand. Participants can also choose between local and cloud recording:

• Local record: After administrators have enabled the feature in the Lark Admin Console, participants can choose to save the recording to their local devices from the desktop app.

• Cloud record: The audio, speaker video, and shared content in the meeting will be recorded and converted to a Minutes file.

---

[7] *See, e.g.*, https://www.larksuite.com/en_us/plans.



Sources: https://www.larksuite.com/en_us/product/video; https://www.larksuite.com/hc/en-US/articles/360048487750-record-a-call-or-meeting; https://www.larksuite.com/hc/en-US/articles/132954278860-share-minutes (emphasis added).

140.   The '733 Accused Products identify "a request to record a meeting between a plurality of participants." For example, Lark identifies a request to record a meeting having multiple participants when, e.g., a Record button is pressed:

## I. Intro

Participants can start recording manually during a meeting, or enable automatic recording beforehand. Participants can also choose between local and cloud recording:

- Local record: After administrators have enabled the feature in the Lark Admin Console, participants can choose to save the recording to their local devices from the desktop app.

- Cloud record: The audio, speaker video, and shared content in the meeting will be recorded and converted to a Minutes file.

60



Source: https://www.larksuite.com/hc/en-US/articles/360048487750-record-a-call-or-meeting
(emphasis added).

141.    The '733 Accused Products, in response to identifying the request, determine "meeting properties associated with the meeting, wherein the meeting properties include a meeting subject associated with the meeting and a list of participants invited to the meeting." For example, in response to identifying the recording request, Lark determines meeting properties associated with the meeting, such as subject (e.g., "project review"), time, date, and meeting participants:



Source: https://www.larksuite.com/hc/en-US/articles/360048487750-record-a-call-or-meeting (emphasis added).

142.   The '733 Accused Products generate "permissions for accessing a recording of the meeting based on the meeting properties, wherein the permissions include access permissions for one or more persons to access the recording, wherein the one or more persons were not invited to the meeting based on the list of participants invited to the meeting and are associated with a workgroup within an organization that is also associated with the plurality of participants." For example, Lark generates permissions for accessing a recording of the meeting based on the meeting properties, including access permissions to be granted to non-participants of the meeting that are associated with the organization's workgroup, which includes meeting participants, when a meeting recording is shared to them:

62

## Share Minutes through Video Meeting Assistant

After a recorded meeting ends, the person who organized the event or initiated the instant meeting will receive a notification from Video Meeting Assistant.

Click **Share Minutes With All Participants** to share the Minutes file with all participants. If some participants were external members, a confirmation window will point this out.

## Share Minutes from the Minutes details

1. On the Minutes details page, click **Share** in the upper-right corner.
2. On the pop-up, do either of the following:
   - In the **Invite collaborators** search box, search or click the + **Add people** icon to add the users, groups, or departments you want to share with.
   - Click **Copy Link** or copy the URL from the browser's address bar, then send the link to the ones you want to share with.
3. The owner of the Minutes file can further set the permission in the **Link sharing range**.
   - If you want all members of the organization to be able to access the Minutes file, you can choose **People in the organization with the link can view/edit.**
   - If you want to make the content of the Minutes public on the internet, you can choose **Anyone with the link can view/edit.**



Source: https://www.larksuite.com/hc/en-US/articles/132954278860-share-minutes (emphasis added).

63

143.    The '733 Accused Products receive, "over a communication network, media output generated by the plurality of participants via respective communication devices." For example, Lark receives audio and video (i.e., media output) generated by the meeting participants via the participants' respective communication devices:



Source: https://www.larksuite.com/en_us/product/video.

144.    The '733 Accused Products generate "the recording of the meeting by storing the media output in a database of a storage system." For example, Lark generates the recording of the meeting by storing the audio and video in cloud storage (i.e., database of a storage system):

## I. Intro

Participants can start recording manually during a meeting, or enable automatic recording beforehand. Participants can also choose between local and cloud recording:

- Local record: After administrators have enabled the feature in the Lark Admin Console, participants can choose to save the recording to their local devices from the desktop app.

- Cloud record: The audio, speaker video, and shared content in the meeting will be recorded and converted to a Minutes file.

## View a cloud file

After the recording is finished, the file owner will receive a notification from the **Video Meeting Assistant**, which will include the meeting's topic, date, and Minutes link. Click the link to view the recording. For more information on Minutes, see Get the most out of Lark Minutes.

**Note**: For a pre-scheduled meeting, the owner of the cloud record file will be the meeting organizer. For an ad hoc meeting, the file owner will be the meeting host. For an instant meeting initiated via a meeting room, participants need to specify a cloud record file owner.



Source: https://www.larksuite.com/hc/en-US/articles/360048487750-record-a-call-or-meeting (emphasis added).

145. The '733 Accused Products, after generating the recording of the meeting, receive "a request for the recording of the meeting from a communication device." For example, after generating and storing the recording of the meeting in cloud storage, Lark receives a request for the recording of the meeting from a communication device, e.g., a co-worker requesting access to a recording for a meeting they were unable to attend that was shared to them:

**Share Minutes through Video Meeting Assistant**

After a recorded meeting ends, the person who organized the event or initiated the instant meeting will receive a notification from Video Meeting Assistant.

Click **Share Minutes With All Participants** to share the Minutes file with all participants. If some participants were external members, a confirmation window will point this out.

**Share Minutes from the Minutes details**

1. On the Minutes details page, click **Share** in the upper-right corner.

2. On the pop-up, do either of the following:

   ○ In the **Invite collaborators** search box, search or click the **+ Add people** icon to add the users, groups, or departments you want to share with.

   ○ Click **Copy Link** or copy the URL from the browser's address bar, then send the link to the ones you want to share with.

3. The owner of the Minutes file can further set the permission in the **Link sharing range**.

   ○ If you want all members of the organization to be able to access the Minutes file, you can choose **People in the organization with the link can view/edit.**

   ○ If you want to make the content of the Minutes public on the internet, you can choose **Anyone with the link can view/edit.**

66



Source: https://www.larksuite.com/hc/en-US/articles/132954278860-share-minutes (emphasis added).

146.    The '733 Accused Products provide "the communication device with access to the recording of the meeting in the database upon verifying the identity of a user of the communication device and determining that the user is one of the one or more persons from the permissions." For example, Lark provides the communication device with access to the meeting in the database upon verifying the identity of a user of the communication device, e.g., when the user logs into their account associated with the organization's workgroup, and determining that the user is one of the persons with permission to access the meeting recording, e.g., access was granted to the co-worker when the meeting recording was shared to them:

**Share Minutes through Video Meeting Assistant**

After a recorded meeting ends, the person who organized the event or initiated the instant meeting will receive a notification from Video Meeting Assistant.

Click **Share Minutes With All Participants** to share the Minutes file with all participants. If some participants were external members, a confirmation window will point this out.





Source: https://www.larksuite.com/hc/en-US/articles/132954278860-share-minutes (emphasis added).

147.    The technology discussion above and the exemplary '733 Accused Products provide context for Plaintiff's infringement allegations.

148.    At a minimum, Defendant has known of the '733 Patent at least as early as the filing date of the Complaint. In addition, Defendant has known about the '733 Patent since at least January 23, 2026, when Defendant received Plaintiff's correspondence via FedEx alerting

Defendant to its infringement. Moreover, Defendant has known of the '733 Patent and Plaintiff's theories of infringement prior to this Complaint being filed, as described in the foregoing. *Supra* ¶¶ 17-18.

149.    On information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has actively induced, under 35 U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '733 Accused Products that include or are made using all of the limitations of one or more claims of the '733 Patent to directly infringe one or more claims of the '733 Patent (e.g., claim 8, as discussed above) by using, offering for sale, selling, and/or importing the '733 Accused Products. Since at least the notice provided on the above-mentioned date, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '733 Patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '733 Accused Products, creating and/or maintaining established distribution channels for the '733 Accused Products into and within the United States, manufacturing the '733 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and testing the '733 Accused Products, and/or providing technical support or services for these products to these purchasers in the United States. *See, e.g.*, https://www.larksuite.com/hc/en-US/ (Lark's "Help Center"); https://www.larksuite.com/en_us/ product/video (Lark advertising Meetings); *see also generally* https://www.larksuite.com/hc/en-US/category/7054521564292710406-meetings (Lark offering technical support for Meetings, including for recording and recording sharing). For example, Defendant configures, designs, offers

69

to sell, and sells the Accused Products and such Accused Products contain specific instructions, such as source code and configuration files, that cause such products to infringe the '733 Patent. For example, the instructions such as source code and configuration files of Lark Meetings perform meeting recording access methods for non-invitee co-workers that infringe the '733 Patent.

150.    In the alternative, on information and belief, since at least the above-mentioned date when Defendant was on notice of its infringement, Defendant has contributorily infringed, under 35 U.S.C. § 271(c), one or more claims of the '733 Patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '733 Accused Products. To the extent that the '733 Accused Products do not directly infringe one or more claims of the '733 Patent, such products contain instructions, such as source code, that are especially adapted to cause the '733 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '733 Accused Products to perform in an infringing manner and are a material part of the invention of the '733 Patent and are not a staple article of commerce suitable for substantial non-infringing use. For example, Lark Meetings implements a custom meeting publishing system that records meetings and enables authorized access to non-invitee co-workers, functionality that is not generic and is especially made and specifically adapted to perform the meeting publishing methods that infringe the '733 Patent. Further, the non-invitee co-workers access system in Lark Meetings is a core functionality that inherently infringes the '733 Patent and lacks any substantial non-infringing use.

151.    On information and belief, despite having knowledge of the '733 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '733 Patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high

70

likelihood of infringement. Defendant's infringing activities relative to the '733 Patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

152.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

153.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

154.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

1. A judgment that Defendant has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing and contributing to the infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendant;

3. A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4. A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5. A judgment and order finding this to be an exceptional case and requiring Defendant to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: May 14, 2026

Respectfully submitted,

*/s/ Patrick J. Conroy*
Patrick J. Conroy (Lead Counsel)
Texas Bar No. 24012448
Justin B. Kimble
Texas Bar No. 24036909
Jon Rastegar
Texas Bar No. 24064043
Nathan L. Levenson
Texas Bar No. 24097992
Brandon G. Moore
Texas Bar No. 24082372
NELSON BUMGARDNER CONROY PC
2727 N. Harwood St., Suite 250
Dallas, Texas 75201
(817) 377-9111
pat@nelbum.com
justin@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

*Attorneys for Plaintiff*
*Arlington Technologies LLC*